RECORD NO. 13-4457(L)
CONSOLIDATED W/ 13-4458

IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

RAYMOND COLLINS;
EDWARD WILSON,

*Defendants-Appellants.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT ALEXANDRIA

_____

**CONSOLIDATED OPENING BRIEF OF APPELLANTS**

_____

Christopher R. K. Leibig
Law Office of
  Christopher Leibig LLC
114 North Alfred Street, Suite 101
Alexandria, Virginia  22314
(703) 683-4310 Telephone
chris@chrisleibiglaw.com

*Counsel for Appellant*
*Raymond Collins*

Joan C. Robin
Law Office of
  Joni C. Robin PLLC
114 North Alfred Street
Alexandria, Virginia  22314
(703) 349-1111 Telephone
joni@jonirobinlaw.com

*Counsel for Appellant*
*Edward Wilson*

**LANTAGNE LEGAL PRINTING 801 East Main Street Suite 100 Richmond, Virginia  23219 (804) 644-0477**
**A Division of Lantagne Duplicating Services**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................... ii

JURISDICTIONAL STATEMENT ......................................................1

STATEMENT OF ISSUES PRESENTED..............................................2

STATEMENT OF THE CASE.............................................................3

STATEMENT OF FACTS ..................................................................4

SUMMARY OF ARGUMENT ..........................................................10

ARGUMENT .................................................................................12

I.   THE DISTRICT COURT ERRED BY FAILING TO VOIR DIRE THE JURY PANEL, AT THE DEFENDANT'S REQUEST, ON THE BURDEN OF PROOF AND THE REASONABLE DOUBT STANDARD................................................................................12

II.  THE DISTRICT COURT ERRED BY DENYING THE DEFENDANTS *MOTION TO ARGUE THE LAW TO THE JURY*, WHCH AMOUNTED TO A REQUEST THAT THE JURY BE ALLOWED TO DEFINE THE ELEMENTS OF THE OFFENSES IN LIGHT OF THE HARSH PENALTIES THAT WOULD FOLLOW CONVICTION. ...........................................................................15

III. THE DISTRICT COURT ERRED BY REFUSING TO PROVIDE THE JURY WITH A WRITTEN COPY OF THE JURY INSTRUCTIONS .......16

IV.  THE DISTRICT COURT ERRED BY DENYING DEFENDANT COLLINS' M,OTION TO SUPPRESS EVIDENCE GAINED DURING THE SEARCH OF HIS VEHICLE PURSUANT TO THE FOURTH AMENDMENT (MARCH 26, 2012 HOUSTON TRAFFIC STOP) ...............................................................................18

V.     THERE WAS INSUFFICIENT EVIDENCE AS A MATTER OF LAW
       TO CONVICT MR. WILSON OF CONSPIRING TO DISTRIBUTE
       FIVE KILOGRAMS OR MORE OF COCAINE AND 28 GRAMS OR
       MORE OF COCAINE BASE.......................................................................21

       A.    Standard of Review.............................................................21
       B.    Discussion of Issues ...........................................................21

VI.    THE TRIAL COURT ERRED AT SENTENCING IN HOLDING MR.
       WILSON ACCOUNTABLE FOR 150 KILOGRAMS OF COCAINE
       FOR GUIDELINES PURPOSES ...................................................26

       A.    Standard of Review.............................................................26
       B.    Discussion of Issues ...........................................................26

VII.   THE DISTRICT COURT ERRED IN FAILING TO PROPERLY
       INSTRUCT THE JURY TO MAKE AN INDIVIDUALIZED
       DETERMINATION OF DRUG QUANTITY ATTRIBUTABLE TO
       EACH DEFENDANT BASED UPON *PINKERTON* PRINCIPLES OF
       REASONABLE FORESEEABILITY .........................................................27

       A.    Standard of Review.............................................................27
       B.    Discussion of Issues ...........................................................28

VIII.  THE DISTRICT COURT COMMI5TTED REVERSIBLE ERROR IN
       ADMITTING AGAINST MR. WILSON A JAIL PHONE CALL
       CONTAINING 0PREJUDICIAL STATEMENTS MADE BY MR.
       COLLINS AFTER THE CONSPIRACY ENDED.......................................31

       A.    Standard of Review .........................................................31
       B.    Discussion of Issues ...........................................................31

CONCLUSION ...................................................................................................35

REQUEST FOR ORAL ARGUMENT ...................................................35

CERTIFICATE OF COMPLIANCE....................................................37

CERTIFICATE OF FILING AND SERVICE .......................................38

ii

# TABLE OF AUTHORITIES

## CASES

Page

*Andrews v. Hovey*,
    124 U.S. 694, 8 Sup. Ct. 676, 31 L. Ed. 557 (1888) ......................................16

*Apprendi v. New Jersey*,
    530 U.S. 466 (2000)........................................................................................21

*Brown v. Commonwealth.*,
    86 Va. 466, 10 S.E. 745 (1890) ...................................................................16

*Bruton v. United States*,
    391 U.S. 123 (1968)........................................................................................34

*Bumper v. North Carolina*,
    91 U.S. 543 (1968)....................................................................................18, 19

*Crawford v. Washington*,
    541 U.S. 36 (2004)........................................................................................34

*Florida v. Harris*,
    568 U.S. ____ (2013).....................................................................................20

*Gall v. United States*,
    552 U.S. 38 (2007)........................................................................................26

Georgia v. Brailsford,
    2 U.S. 409 (1792)..........................................................................................16

*Grandslinger v. United States*,
    332 F.2d 80 (10th Cir. 1964) .......................................................................14

*Illinois v. Gates*,
    462 U.S. 213 (1982)......................................................................................24

*Jackson v. Virginia*,
    443 U.S. 307 (1979)......................................................................................21

*Katz v. United States*,
389 U.S.347 ...............................................................................................18

*Liverpool & G. W. Steam Co. v. Phenix Insurance Co.*,
129 U.S. 397, 9 Sup. Ct. 469 .......................................................................16

*Mu'min v. Virginia*,
500 U.S. 415 (1991)......................................................................................14

*Nathanson v. United States*,
290 U.S. 41 (1933).......................................................................................24

*Rosales-Lopez v. United States*,
451 U.S. 182 (1981)......................................................................................13

*Sasaki v. Class*,
92 F.3d 232 (1996) .......................................................................................13

*Schneckloth v. Bustamonte*,
412 U.S. 218 (1973)......................................................................................18

*Shannon v. United States*,
512 U.S. 573 (1994)......................................................................................15

*Sparf v. United States*,
156 U.S. 51 (1895)..................................................................................15, 16

*The J. E. Rumbell*,
148 U.S. 1, 13 Sup. Ct. 498 .........................................................................16

*United States v. Bell*,
667 F.3d 431 (4th Cir., 2011) ......................................................................27

*United States v. Blevins*,
960 F.2d 1252 (4th Cir. 1992) .....................................................................31

*United States v. Blount*,
479 F.2d 650 (6th Cir. 1973) .......................................................................14

iv

*United States v. Campbell*,
    935 F.2d 39 (4th Cir.1991) ...............................................................34

*United States v. Carter*,
    564 F.3d 325 (4th Cir. 2009) ...........................................................26

*United States v. Collins*,
    415 F.3d 304 (4th Cir. 2005) .............................................22, 30, 31

*United States v. Connolly*,
    503 F.2d 520 (8th Cir. 1974) ...........................................................17

*United States v. Donovan Moncrieffe*,
    (No. 08-4344 )(2009)(Unpublished)..............................................17

*United States v. Evans*,
    526 F.3d 155 (4th Cir.2008) .............................................................26

*United States v. Foster*,
    507 F.3d 233 (2007) .........................................................................30

*United States v. Gibbs*,
    421 F.3d 352 (5th Cir.2005) .............................................................19

*United States v. Green*,
    599 F.3d 360 (4th Cir.2010) .............................................................21

*United States v. Hickman*,
    626 F.3d (4th Cir. 2010) ...................................................................22

*United States v. Hicks*,
    748 F.2d 854 (4th Cir. 1984) ...........................................................28

*United States v. Irvin*,
    2 F.3d 72 (4th Cir.1993) ............................................................21, 30

*United States v. Lewis*,
    53 F.3d 29 (4th Cir. 1995) ...............................................................28

*United States v. Lighty*,
    616 F.3d 321 (4th Cir. 2010) ..........................................................................31

*United States v. Marrero-Ortiz*,
    160 F.3d 768 (1st Cir. 1998)...........................................................................22

*United States v. Matlock*,
    415 U.S.164 (1974)...........................................................................................19

*United States v. Miller*,
    758 F.2d 570 (11th Cir. 1985) ........................................................................14

*United States v. Moore*,
    936 F.2d 1508 (7th Cir. 1991) ........................................................................13

*United States v. Moore*,
    522 F.2d 1068 (9th Cir. 1975) ........................................................................33

*United States v. Parent*,
    954 F.2d 23 (1st Cir. 1992)..............................................................................17

*United States v. Patterson*,
    150 F.3d 382 (4th Cir. 1998) ..........................................................................27

*United States v. Price*,
    577 F.2d 1356 (9th Cir. 1978) ........................................................................14

*United States v. Robert Jeffery*,
    (No. 09-5229 (February 9. 2011)....................................................................14

*United States v. Smith*,
    452 F.3d 323 (4th Cir. 2006) ..........................................................................17

*United States v. Thompson*,
    421 F.3d 278 (4th Cir. 2005) ..........................................................................28

*United States v. Wooten*,
    518 F.2d 943 (3rd Cir. 1975) ....................................................................13, 14

*Vale v. Louisiana*,
    399 U.S. 30 (1970)...................................................................................18

## STATUTES

18 U.S.C. 924(c) ...........................................................................................1
18 U.S.C. § 3231 ...........................................................................................1
21 U.S.C. § 841(a) .........................................................................................1
21 U.S.C. § 841(b) ............................................................11, 24, 26, 30, 31
21 U.S.C. § 846 ..............................................................................................1
28 U.S.C. §1291 ............................................................................................1

## RULES

Fed.R.Crim P. 24...................................................................................10, 13
Fed.R.Evid. 104(a) .......................................................................................19
Fed.R.Evid. 801(d)(2)(A) ............................................................................33
Fed.R.Evid. 801(d)(2)(B)............................................................................33

UNITED STATES OF AMERICA, Plaintiff - Appellee,

v.

Raymond Ty Collins

And

Edward Wilson, Defendant - Appellant.

Nos. 13-4457(L) & 13-4458
September 30, 2013.

On Appeal from the United States District Court for the Eastern District of
Virginia, Alexandria Division

**Brief of Appellants**

Christopher Leibig, Law Office of Christopher Leibig, 114 North Alfred Street,
Alexandria, Virginia 22314, (703) 683-4310, Counsel for Appellant Collins.

Joan C. Robin, Law Office of Joni C. Robin, 114 North Alfred Street, Alexandria,
Virginia 22314, (703) 349-1111, Counsel for Appellant Wilson.

## JURISDICTIONAL STATEMENT

This case is an appeal of: i) Appellant Edward Wilson's and Raymond
Collins' convictions under 21 U.S.C. § 846 and § 841(a), conspiracy to distribute
five kilograms or more of cocaine and 28 grams or more of cocaine base, and ii)
Appellant Collins' conviction under 18 U.S.C. 924(c), possession of a firearm in
relation to a drug trafficking crime. This Court has appellate jurisdiction pursuant
to 28 U.S.C. §1291. The district court had subject matter jurisdiction pursuant to
18 U.S.C. § 3231.  The United States District Court for the Eastern District of
Virginia, Alexandria Division, the Honorable Claude M. Hilton, presiding, entered

a final judgment on June 5, 2013, sentencing Mr. Collins to 240 months imprisonment on count one, and 60 months as to count 2, to run consecutively; and sentencing Mr. Wilson to 240 months imprisonment on count one. The defendants timely noted their appeal on June 12, 2013.

## STATEMENT OF ISSUES PRESENTED

1. Whether the district court erred refusing to voir dire the jury on the burden of proof and reasonable doubt.

2. Whether the district court erred, pursuant to the doctrine of originalism, by refusing to allow the defendants to argue the law to the jury, including on the issue of unfair mandatory minimum sentences.

3. Whether the district court erred in refusing to provide the jury with written jury instructions.

4. Whether the district court erred in denying Collins' motion to suppress evidence obtained during a search of his vehicle on March 26, 2012.

5. Whether there was insufficient evidence as a matter of law to convict Mr. Wilson of conspiring to distribute five kilograms or more of cocaine and 28 grams or more of cocaine base.

6. Whether the trial court erred at sentencing by holding Mr. Wilson accountable for 150 kilograms of cocaine for guidelines purposes.

7. Whether the district court erred by Failing to Properly Instruct The Jury to make

2

an individualized determination of drug quantity attributable to each defendant based upon *Pinkerton* principles of reasonable foreseeability.

8. Whether the district court committed reversible error in admitting against Mr. Wilson a jail phone call containing prejudicial statements made by Mr. Collins after the conspiracy had ended.

## STATEMENT OF THE CASE

Mr. Collins and Mr. Wilson were charged as part of a drug conspiracy in an indictment on November 29, 2012. JA 21.  In count one, the Government alleged that in or around 2009 through in and around March 2012, Mr. Collins and Mr. Wilson conspired with each other and others to distribute five kilograms or more of cocaine and 280 grams or more of cocaine base.  JA 21.  In count two, the Government alleged that on March 26, 2012, Mr. Collins possessed a firearm during and in relation to a drug trafficking crime.  JA 21. The Government filed notice of its intention to seek enhanced minimum mandatory and maximum sentences as to each defendant on January 8, 2013. JA 28, 43.  Both defendants filed several pretrial motions, which were denied in a written order dated January 29, 2013.  JA 201. The court denied Collins motions to suppress evidence on January 25, 2013 after an evidentiary hearing by finding that Collins consented to the search of his vehicle. JA 195. A two day jury trial was held on February 25 and 26, 2013. JA 13.  At the close of the Government's evidence and again at the close

of the case, the district court denied each defendant's motion for judgment of acquittal. JA 13. The jury returned a guilty verdict against Mr. Collins and Mr. Wilson on count one, and found them both responsible for five kilograms or more of cocaine and 28 grams or more of cocaine base. JA 717-718. The jury also convicted Mr. Collins of count two, possession of a firearm in furtherance of a drug trafficking crime. JA 717. On March 12, 2013, Mr. Collins and Mr. Wilson filed post trial motions, which were denied by the district court on May 31, 2013. JA 719-25, 784. At the sentencing hearing on May 31, 2013, and in his written Position on Sentencing, Mr. Wilson objected to the drug weight attributed to him in his guidelines. JA 752-53, 772-779. The trial court ruled that the guidelines were properly calculated. JA 781. Judge Hilton entered a judgment in the criminal case on June 5, 2013; sentencing Mr. Collins to 240 months imprisonment on count one and 60 months on count two, for a total sentence of 300 months imprisonment. JA 785-790. Judge Hilton sentenced Mr. Wilson to 240 months imprisonment on count one. JA 791-796. Each defendant timely noted his appeal on June 12, 2013. JA 797-799.

## STATEMENT OF FACTS

In February 2011, a government informant in the Eastern District of Virginia, sought to purchase 3 ounces of powder cocaine from Mr. Stevie Thornton ("Thornton") at the request of government agents. JA 381, 397. Thornton agreed

to sell him 3 ounces of cocaine. JA 381, 397. Because Thornton did not have 3 ounces of cocaine, he called around to find someone who could supply the drugs. JA 382. He contacted Jameon Mitchell ("Mitchell") and Mitchell agreed. JA 383. On February 15, 2011, the informant flew from Virginia to Texas to meet Thornton and Mitchell. JA 383. Mitchell then sold him 3 ounces of powder cocaine. Neither Mr. Collins nor Mr. Wilson was involved in the February 16, 2011 drug deal. JA 398.

The informant initiated a second cocaine deal with Thornton at the request of government agents in April of 2011. JA 385, 397. He flew to Houston seeking to buy 4 ounces of powder cocaine. JA 385. Thornton found a new drug supplier for the April deal, Christopher Buckner ("Buckner"). JA3 85-86.

On April 12, 2011, Buckner met the informant and Thornton in Houston to conduct the drug deal. JA 387, 460. When Buckner arrived, Thornton got in Buckner's car. JA 387. Buckner then called Raymond Collins ("Collins"), who was supposed to supply Buckner with the cocaine. (115) Collins was running late and instructed Buckner to meet him at the Taco Cabana restaurant. JA 460-61. When Buckner arrived, Collins was not there. Eventually, Collins told Buckner that he was not able to meet due to child obligations. He told Buckner that he (Collins) would have to ask Mr. Wilson to go instead. JA 461. Buckner did not know what car to expect Wilson in. JA 462. When Wilson arrived, he was driving

a blue Acura SUV. JA 461-62. Buckner did not know who owned the car, only that he had seen Wilson drive it on a couple of prior occasions. JA 499.

Buckner entered the Acura, handed the money to Wilson, and accepted 3.3 ounces of powder cocaine. (JA 462, 572, 701) Buckner exited the SUV, re-entered his car and handed the bag to Thornton. JA 462. Buckner and Thornton later gave the bag to the informant, who gave it to law enforcement. JA389. After the April deal, Buckner continued to deal with Thornton and Collins, but not Wilson. JA466.

The third contemplated drug deal was to occur in June of 2011. JA 389. The informant arranged to buy ½ kilogram of cocaine from Thornton. JA 389. The plan, which did not include Wilson, called for Thornton and Buckner to get the money from the informant, so that Buckner could buy the cocaine from Collins. JA 467-68, 390. It was called off due to police in the area. JA 402-03, 468.

On March 26, 2012, in Houston, Texas, DEA Agent Terrance Bryant was conducting surveillance of a suspect, later identified as Raymond Collins. After observing suspicious activity, Bryant and other agents decided to follow Collins' vehicle and the vehicle driven by a woman who had interacted with Collins[1]. JA 128-129. While following Collins' vehicle, Bryant observed a traffic infraction. JA

---

[1] Bryant and other agents observed a woman briefly enter Collins blue SUV in a Wal Mart parking lot, then return to her own vehicle with something under her shirt. No agents observed a drug transaction or saw any drugs. JA 166, 117 Based on that and previous observations of Collins, the agents decided to follow both vehicles. JA 129.

130, 131. He then called for a marked unit, driven by Officer Le, to conduct a traffic stop[2]. Le told Bryant, after his traffic stop of Collins, that Collins had given consent to a search of his vehicle. JA 132. Bryant then called for a K-9 unit to assist in the search. JA 133. The canine unit arrived ten or fifteen minutes later. JA 133. Before the K-9 unit arrived, Bryant was inside the vehicle searching it. JA 133. He "searched until the K-9 arrived." JA 146-147. When the K-9 arrived, some of the agents were standing around, but there "may have been a couple still looking in various places" in the vehicle. JA 147. The rationale for searching the car was "consent", and the purpose of calling for the K-9 was that "the K-9 can obviously locate things we may not see with the naked eye and lead us in the right direction as to where we need to search further." JA 149. Officer Le, the officer who purportedly gained Collins consent to search the vehicle, did not testify at the suppression hearing. Nothing in the record explains why the government did not call him as a witness. Agent Bryant, the agent who conducted the search based on the consent allegedly obtained by Officer Le, testified as follows about his personal knowledge of the manner and scope of Collins' alleged consent: (1) The entirety of his conversation with Le about consent was that he asked Le if Collins had given consent and Le said "yes" JA 143; (2) He did not inquire into the words used by Collins to give consent. JA 143; (3) He did not ask Le whether it was explicit or

_____

[2] Mr. Collins does not challenge the grounds for the initial traffic stop on this appeal, only the search of his vehicle.

7

implied consent. JA 143; (4) He did not ask when Collins had consented; (5) He did not ask Le if Collins had revoked his consent at any point. JA 144 (6) He had no idea what "consent" means to Le except that Le went to the police academy. JA 145; (7) Other than Le's "yes" response, Bryant searched the car without any further evidence of consent JA 145:

After officers completely searched the vehicle, K-9 Officer Thomas arrived. The vehicle doors were open when he arrived. JA 175, 186. He was asked to have his K-9, "Jack", to "do a sniff of the vehicle". JA 175. After alerting to the exterior of the vehicle, Thomas had Jack enter the vehicle, where he alerted on a shoebox. JA 177. Nothing was in the shoebox. JA 178. The K-9 also alerted on what Thomas believed to be a hidden compartment in the console. JA 177. A large amount of money had been located in the vehicle before the K-9 unit arrived. JA 169. K-9's, including Jack, sometimes alert on money and on areas with no drugs that could be carrying a residual drug odor. JA 191, 192. Thomas did not know for how long residual odors of drugs may trigger an alert. JA 192. Thomas testified as follows concerning his Jack's training and experience: (1) Jack had been "certified" the month before the search for the first time. JA 172; (2) The process included 160 hours of training. JA 173; (3) Jack had been deployed less than ten times before the search and alerted on money before JA 191; and (4) Jack will "alert on a squirrel if you want him to" JA 193. Houston Officer Ben Katrib

arrived on the scene after the search of the vehicle and helped extract the hidden compartment, where he found a firearm and 85 grams of cocaine. JA 170.

*Texas drug activities between 2009 and 2011*

Buckner testified that he bought powder cocaine and crack cocaine from Collins, whom he claimed was his main supplier, between 2009 and 2011. JA 451-52. No witness claimed that Mr. Wilson was present or involved in any of the deals between Buckner and Collins, apart from the April 2011 deal. JA 451-52. Buckner testified that he observed Collins cook cocaine powder. JA452. No witness alleged that Wilson was present for any of the cocaine cooking. JA 452. Buckner testified that he introduced Collins to Georgia customers seeking to purchase cocaine. JA457-48. No witness alleged that Wilson was involved with Collins' Georgia customers. JA457-58.

When asked whether he had *ever* observed Wilson sell drugs, Buckner said that Wilson had sold drugs (approximately ½ ounce of crack) to him on one prior occasion. JA456. He did not say when the sale occurred.

After Collins and Wilson were arrested and criminally charged, they spoke on the phone at the Alexandria Jail. The taped conversation was admitted into evidence against both defendants, over Wilson's objection. JA. 567.

9

## SUMMARY OF ARGUMENT

`ISSUE ONE: The trial court erred by failing, upon request, to voir dire the jury on the burden of proof and reasonable doubt because the defendants in this case were relying in part on the technical defense that while the evidence may prove drug dealing activity in Texas, they did not join the charged conspiracy. Because reasonable, conscientious jurors may have been wiling to express a reluctance to return drug dealers to the street on what sounds to a lay person to be a non-substantive reason, failure to inquire as to jurors ability to follow the law deprived the defendants of information they were entitled to in order to under the Sixth Amendment and Fed.R.Crim P. 24 to exercise causal challenges and peremptory strikes. Both defendants join this issue. The standard of review is abuse of discretion.

ISSUE TWO: The trial court erred by not allowing the defendants to inform the jury that they faced harsh mandatory penalties if convicted and argue that conscientious disagreement with such sentences should result in construction of the elements of the offenses in the defendants favor.  While this issue has been addressed in the Fifth and Sixth Amendment context, it has not been raised pursuant to the doctrine of originalism. Because juries at the time of the founding addressed matters of law and fact, the jury should have been able to construe the

elements of conspiracy in light of the harsh penalties involved. Both defendants join this issue. The standard of review is de novo.

ISSUE THREE: The trial court erred by refusing to give written copies of the instructions to the jury because the charges and defenses were complicated and technical, and the jury demonstrated confusion over one of the central issues in the case.    Both defendants join this issue. The standard of review is abuse of discretion.

ISSUE FOUR: The trial court erred by denying defendant Collins motion to suppress evidence obtained through a search of his vehicle because the government failed to demonstrate Collins voluntary consent to the search. Defendant Collins raises this issue. The standard of review is de novo.

ISSUE FIVE: The trial court erred by denying Mr. Wilson's Rule 29 motion for judgment of acquittal when there was insufficient evidence as a matter of law that Mr. Wilson personally distributed, aided or abetted others in distributing, or could reasonably foresee that others would distribute five kilograms of cocaine and 28 grams of cocaine base in furtherance of the conspiracy, for purposes of determining threshold drug quantity under 21 U.S.C. § 841(b).  Defendant Wilson raises this issue. The standard of review is de novo.

ISSUE SIX: The trial court erred at sentencing in finding Mr. Wilson responsible for 150 kilograms of cocaine for guidelines purposes. Defendant Wilson raises this

issue. The standard of review is abuse of discretion.

ISSUE SEVEN:  The trial court erred in failing to properly instruct the jury to make an individualized determination of drug quantity attributable to each defendant based upon *Pinkerton* principles of reasonable foreseeability.  Defendant Wilson raises this issue. The standard of review is de novo.

ISSUE EIGHT: The trial court erred in admitting against Mr. Wilson a jail phone call containing prejudicial statements made by Mr. Collins after the conspiracy ended.   The court erroneously admitted the call, which consisted of several statements by Collins and one statement by Wilson disagreeing with Collins, upon the theory that it constituted an admission by Wilson to the existence of a conspiracy.  Defendant Wilson raises this issue. The standard of review is abuse of discretion as to the hearsay argument and de novo as to the Confrontation Clause argument.

## ARGUMENT

## I.    THE DISTRICT COURT ERRED BY FAILING TO VOIR DIRE THE JURY PANEL, AT THE DEFENDANT'S REQUEST, ON THE BURDEN OF PROOF AND THE REASONABLE DOUBT STANDARD.  JA 307, 358.

The defendants were charged with conspiracy to distribute cocaine. Mr. Collins was charged with possession of a firearm in furtherance thereof. Both defendants contended at trial that despite evidence of drug dealing, they were not members of the *charged* conspiracy. Thus, their defense in part turned on the

12

juror's ability to apply the burden of proof *even if* they believed the defendants were drug dealers as a general matter. Mr. Collins[3] submitted proposed voir dire questions in advance of trial, several of which touched on the burden of proof and reasonable doubt standard given the technical nature of part of his defense. JA 307. The entire voir dire consisted of  seven questions (including one about scheduling conflicts, one about knowing the lawyers or defendants, and one about prior jury service). None of the questions related to feelings about cocaine, guns, or anything specific about the case. JA 350-355. Eight panel members had some connection to law enforcement, but the court refused to voir dire them about whether they could apply the presumption of innocence in a case involving cocaine, guns, and a technical defense. JA 351-358.

In criminal cases, the voir dire examination is covered by Fed.R.Crim.P. 24, and the Sixth Amendment's guarantee of an impartial jury defines its central purpose. *United States v. Wooten,* 518 F.2d 943, 946 (1975). The trial court has broad discretion in deciding to ask voir dire questions of the venire during jury selection. *Sasaki v. Class*, 92 F.3d 232, 238 (1996)(citing *Rosales-Lopez v. United States,* 451 U.S. 182, 189 (1981)). While conducting voir dire the court should ask questions submitted by counsel if they are reasonable. *United States v. Moore*, 936 F.2d 1508, 1515 (7th Cir. 1991). Voir dire examination is designed to serve two

---

[3] Mr. Wilson adopted Mr. Collins proposed voir dire requests, preserved this issue for appeal, and joins this argument. JA 344, 358.

functions, both enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges, *Mu'min v. Virginia*, 500 U.S. 415, 424 (1991). In *United States v. Blount*, 479 F.2d 650, 651 (6th Cir. 1973), in holding that voir dire questions on the burden of proof and reasonable doubt were required when requested, the Sixth Circuit stated:

> Certainly, a challenge for cause should be sustained if a juror expressed his incapacity to accept the proposition that a defendant is presumed innocent despite the fact that he has been accused in an indictment or information. It is equally likely that careful counsel would exercise a peremptory challenge if a juror replied that he could accept this proposition on an intellectual level but that it troubled him viscerally because folk wisdom teaches that where there is smoke there is fire. *Id*. at 651-652.

Other Courts have held differently. *See United States v. Miller*, 758 F.2d 570 (11th Cir. 1985); *Grandslinger v. United States*, 332 F.2d 80 (10th Cir. 1964); *United States v. Price*, 577 F.2d 1356 (9th Cir. 1978); *United States v. Wooten,* 518 F.2d 943 (3rd Cir. 1975). [4]

In *Blount*, the Court was concerned with jurors believing that "where there's smoke there's fire." *Id.* at 651. This case presents the greater problem of "where

---

[4] This Court addressed this precise issue, arising from the same trial judge's court, in *United States v. Robert Jeffery* (No. 09-5229 (February 9. 2011)(UNPUB). The Court noted the Circuit split on the issue, but declined to find error. Anecdotally, in oral argument, the panel noted to the Government that the trial court's voir dire was particularly limited, and that it would only have taken a moment to pursue the defendant's inquiry. The government agreed, noted that this particular trial court was known for limited voir dire, but argued that the voir dire was constitutionally sufficient. This Court should revisit the issue in the interests of justice because the issue of sparse voir dire is plainly a continuing one in this trial court.

there's fire there's fire." The Sixth Amendment required that the defendants have a jury free of any jurors who would fail to apply the burden of proof on whether they were guilty of the *charged offense* – not just drug dealing in general. The defendants submit that it is more than mere speculation that jurors, particularly those linked to law enforcement, would have discussed reservations about the burden of proof in a case like this if given the chance.

**II. THE DISTRICT COURT ERRED BY DENYING THE DEFENDANTS *MOTION TO ARGUE THE LAW TO THE JURY*, WHCH AMOUNTED TO A REQUEST THAT THE JURY BE ALLOWED TO DEFINE THE ELEMENTS OF THE OFFENSES IN LIGHT OF THE HARSH PENALTIES THAT WOULD FOLLOW CONVICTION. JA 75, 87, 107.**

In this case, Mr. Collins faced mandatory punishment of twenty-five years, and Wilson twenty years.[5] The defendants submit that they should have been permitted to ask the jury to construe the elements of the offenses according to its own conscience  in light of the harsh penalties. They rely not only on the Fifth and Sixth Amendment for this assignment of error, but the doctrine of originalism.

The defendants recognize that *Sparf v. United States* 156 U.S. 51(1895) is relevant authority on this matter.[6] *Sparf* overruled decades of precedent by holding that a jury's role in trial is circumscribed to evaluating the facts relevant to guilt or

---

[5] Wilson adopted Collins motion at the trial level, and joins this issue. JA 87.

[6] The defendants also recognize that some precedents hold that juries should not be informed of the consequences of conviction. However, they raise this issue as one of originalism in addition to pursuant to the Sixth Amendment. *See Shannon v. United States,* 512 U.S. 573, 584 (1994). The defendant's written pre-trial motion, which was denied without argument by the trial court, raises both issues.

innocence. *See Georgia v. Brailsford* (1794)(holding that juries have the right to decide the law). It was not until 1890 that Virginia cast aside the intent of the framers and confined the jury's role to deciding facts. *Brown v. Commonwealth.*, 86 Va. 466, 10 S.E. 745, 747 (1890) The United States Supreme Court followed suit in the *Sparf* case five years later. The dissent in *Sparf* noted that the majority opinion represented a break from original intent:

> But, upon the question of the true meaning and effect of the constitution of the United States in this respect, opinions expressed more than a generation after the adoption of the constitution have far less weight than the almost unanimous voice of earlier and nearly contemporaneous judicial declarations and practical usage. Stuart v. Laird, 1 Cranch, 299. And, upon this constitutional question, neither decisions of state courts, nor rulings of lower courts of the United States, can relieve this court from the duty of exercising its own judgment. *Liverpool & G. W. Steam Co. v. Phenix Ins. Co.*, 129 U. S. 397, 443, 9 Sup. Ct. 469; *Andrews v. Hovey*, 124 U. S. 694, 717, 8 Sup. Ct. 676; The J. E. Rumbell, 148 U. S. 1, 17, 13 Sup. Ct. 498.   *Sparf* at 169.

The holding of *Sparf* should be revisited. The jury in this case should have been allowed to define the elements of conspiracy according to its own conscience in light of the harsh penalties involved.

## III.     THE DISTRICT COURT ERRED BY REFUSING TO PROVIDE THE JURY WITH A WRITTEN COPY OF THE JURY INSTRUCTIONS. JA 60, 107.[7]

---

[7] This court should reverse on this issue in conjunction with the court's failure to instruct the jury on the burden of proof and reasonable doubt because this particular trial court's policy of refusing to voir dire on the burden of proof or to allow the jury a written copy detailing the burden of proof constitutes a repetitive unfairness to defendants in that juror's exposure to the reasonable doubt concept is limited to the court's verbal reading of the instructions one time.

Mr. Collins[8] moved pre-trial for the jury to be provided a written copy of the jury instructions on the grounds that the defenses in the case (multiple conspiracy defense, mere buyer-seller relationship defense), the parameters of co-conspirator liability, and the elements of conspiracy in a case where the defendants had no connection to Virginia were complex concepts that a jury would not be able to understand after merely hearing the instructions read one time. This Court addressed this precise issue from the same trial court in *United States v. Donovan Moncrieffe,* (No. 08-4344)(2009)(UNPUB). In that case, this court correctly noted that the decision to provide a set of written instructions to the jury for their reference is within the sound discretion of the trial court. *See United States v. Connolly,* 503 F.2d 520, 522 (8th Cir. 1974); *United States v. Parent*, 954 F.2d 23, 24 (1st Cir. 1992); *United States v. Smith,* 452 F.3d 323, 332 (4th Cir. 2006). However, in failing to find error, the Court noted that "at no point did the jury express confusion or ask to be reinstructed." *Id.* at 9. In the present case, the jury expressed confusion and asked to be reinstructed on the issue of drug weight and the concept of multiple conspiracies – critical issues in the case that were a large part of defendants closing arguments. JA 618.,627.[9]

---

[8] Wilson adopted Collins' motion at the trial level and joins this issue. JA 85.

[9] During deliberations, the jury asked "The quantity of cocaine and cocaine base – do they relate to Virginia or anywhere?" JA 648. The court re-instructed the jury on the point, and they returned guilty verdicts forty-four minutes later. JA 656.

**IV. THE DISTRICT COURT ERRED BY DENYING DEFENDANT COLLINS' MOTION TO SUPPRESS EVIDENCE GAINED DURING THE SEARCH OF HIS VEHICLE PURSUANT TO THE FOURTH AMENDMENT (MARCH 26, 2012 HOUSTON TRAFFIC STOP). JA 54, 112, 194-200, 507.**

Because the record is utterly silent on the question of whether Collins' alleged consent to search his vehicle was voluntary, the trial court's finding of voluntary consent must be reversed. The law on this issue is clear. A search conducted pursuant to a valid consent is constitutionally permissible. *Katz v. United States,* 389 U.S.347, 358. (1967); *Vale v. Louisiana,* 399 U.S. 30 (1970). Where the government seeks to rely on consent to justify a search, it "has the burden of proving the consent was, in fact, freely and voluntarily given. *Bumper v. North Carolina,* 391 U.S. 543, 548 (1968).  Whether  consent is voluntary in a given case is a question of fact which must be determined from the totality of the circumstances.  *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973).

In *Schneckloth,* the court declined to adopt a rule that a suspect must be informed of his right to refuse a consent search in order for consent to be voluntary, but nevertheless held that the government must "demonstrate that the consent was in fact voluntarily given, and not the result of duress, express of implied." *Schneckloth* at 248.  While factual determinations made by a trial court at a motion to suppress are entitled to deference from this Court, this standard is particularly deferential where "denial of a suppression motion is based on live oral

testimony ... because the judge had the opportunity to observe the demeanor of the witnesses." *United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir.2005).

The entirety of the evidence of consent before this court is that Agent Bryant testified that Officer Le, having spoken with Mr. Collins during the traffic stop while Collins' car was surrounded by unmarked DEA vehicles, stated "yes" when asked if Mr. Collins gave consent. While defense counsel could speculate about how consent under such circumstances could have been the product of duress, or whether Collins even gave involuntary consent to Le, none of that is necessary because the government bears the burden of demonstrating *voluntary* consent that was not the result of duress. *Bumper* at 548.[10]

Importantly, the trial court's factual determinations should not be granted much deference on this issue, because the court heard the evidence wrong. In it's ruling, the court stated, "I've got two police officers here that testified under oath that he consented, and that pretty well resolves it." JA 195. In fact, *one* officer testified that *Le said* Collins gave "consent" (not "voluntary consent"). The trial court observed the demeanor of *no person* with personal knowledge of Collins' alleged consent, and did not even hear hearsay evidence touching on the concept of voluntariness. *See Gibbs.*

---

[10] While Collins recognizes that Fed.R.Evid. 104(a) allows hearsay to be admitted at suppression hearings in the court's discretion, *see United States v. Matlock*, 415 U.S.164 (1974), Rule 104(a) does nothing to lower the government's burden in demonstrating voluntary consent.

The court stated in its ruling that the eventual K-9 alert on Collins' vehicle was "irrelevant" because Collins had given consent, and further that "I find the dog is qualified, he's got the proper certificate" JA 198. The finding that Jack was "qualified" has no bearing on the issue before this court because a full search of Collins' vehicle had occurred before Jack arrived on the scene, and Jack's purpose on the scene was only to "lead [police] in the right direction as to where [they] needed to search *further."* (emphasis added). JA 149. Jack's alert on the console may have aided the police in finding the hidden compartment faster, but it had nothing to do with their decision to enter the vehicle and conduct an exhaustive search.[11]

The firearm and the cocaine were introduced at trial. JA 519. 701. They represented the only evidence firearms (the sole subject of count two) and large percentage of the actual cocaine introduced into evidence in the case. In closing argument, the government relied combination of the firearm and the cocaine to

---

[11] Pursuant to the recent United States Supreme court case of *Florida v. Harris,* 568 U.S. ____ (2013), the Government need only establish bona fide certification or the like to establish the reliability of a K-9. Because the question presented at the hearing was consent, the qualifications of Jack were not fully developed. Based on Jack's rookie status and his history of alerting on money, rodents, and places where no drugs are found (like the shoebox in this case), his alert on the vehicle could not support a finding of probable cause in any event. The scene had been compromised before his arrival in that multiple narcotics officers had been inside the vehicle with the doors open - thereby allowing any aromos from the alleged drug money or the cocaine to freely exit the vehicle and make a K-9 alert around the vehicle more likely.

argue Collins' guilt of both of the charged offenses. JA at 614-15.  Further, the

record demonstrates that Collins' trial strategy – conceding involvement in drug

related activities in Texas – was substantially influenced by the denial of the

motion to suppress.

## V. THERE WAS INSUFFICIENT EVIDENCE AS A MATTER OF LAW TO CONVICT MR. WILSON OF CONSPIRING TO DISTRIBUTE FIVE KILOGRAMS OR MORE OF COCAINE AND 28 GRAMS OR MORE OF COCAINE BASE

### A. Standard of Review.

Appellate review of a denial of a motion for a judgment of acquittal is de

novo.  *See United States v. Green*, 599 F.3d 360, 367 (4th Cir.2010).  The question

is "whether, after viewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979).

### B. Discussion of Issues.

In  *United States v. Irvin,* 2 F.3d 72 (4th Cir.1993), the Fourth Circuit held

that *Pinkerton's* reasonable foreseeability principles should be used to determine

the amount of narcotics attributable to each individual conspirator.    *Id.* at 78.

When *Irvin* was decided, the district court determined, by a preponderance of the

evidence, the quantity of narcotics attributable to a defendant for purposes of  21

U.S.C. § 841(b).  *Id.* at 76.    *Apprendi v. New Jersey,* 530 U.S. 466 (2000)

modified *Irvin* by requiring the jury, rather than the judge, to make the

determination of individual drug quantity culpability and by requiring proof beyond a reasonable doubt. But, *Irvin's* holding that *Pinkerton* principles should be used to determine, for sentencing purposes, the amount of narcotics attributable to each *individual* conspirator, remains good law. *United States v. Collins*, 415 F.3d 304, 314 (4th Cir. 2005). Thus, in a conspiracy case, a defendant is accountable only for the quantity of drugs that he personally distributed or imported, aided or abetted others in distributing, or could reasonably foresee that others would distribute during and in furtherance of the conspiracy. *Id.* Conversely, a defendant "cannot be saddled with quantities of drugs that he could not reasonably have foreseen." *U.S. v. Marrero-Ortiz*, 160 F.3d 768, 789 (1st Cir. 1998) (*quoted in Hickman*, F.3d 756, 770 (4th Cir. 2010)). Moreover, "[w]here no evidence exists to guide the trier of fact . . .the trier may not simply guess at the magnitude or frequency of unknown criminal activity. Unbridled speculation is an impermissible basis for conviction beyond a reasonable doubt." *Hickman*, 626 F.3d at 768-69).

The evidence established that Collins and Buckner were engaged in a drug conspiracy from 2009 to June 2011. Buckner witnessed Collins cook cocaine into crack cocaine at Buckner's house and at Buckner's friend's house. JA 452. Buckner introduced Collins to cocaine customers from Georgia and brokered several deals between them. JA 457. Noticeably absent from the government's

case was any evidence that Wilson was present, involved in, or aware of, the cocaine cooking episodes (JA452), the introductions to out-of-town cocaine customers (JA457), the six, seven and twelve ounce deals to Georgia customers (JA457), the installation of Collins' hidden compartment in his truck (JA454), the June 2011 attempted half-kilo deal, or *any* of the repeated drug deals between Collins and Buckner from 2009-2011, apart from a single drug deal on April 12, 2011. Buckner testified that Collins was his main supplier (JA 452) and that Collins sold approximately two kilograms of cocaine every two days JA 458-59. Notwithstanding the tremendous volume of drug deals that Collins would have had to be engaged in to sell the amount of drugs claimed by Buckner, the evidence showed that Wilson was involved only in a single drug deal with Collins.

Wilson's lack of participation in Collins' drug activities notwithstanding, when asked by the government "with respect to cocaine dealing, how would you characterize [Collins' and Wilson's] relationship," Buckner answered, "like brothers. They are like brotherly – like brotherly and business partners." JA 456. Buckner did not elaborate on what business he was referring to (earlier in his testimony he stated that Collins and Wilson had a sports bar  JA 453), nor did he elaborate upon what basis or underlying facts he was basing his conclusion that the men were business partners. The United States Supreme Court has held that a wholly conclusory statement, unsubstantiated by underlying facts, is insufficient

23

even to support a determination of probable cause. *Illinois v. Gates*, 462 U.S. 213, 239 (1982); *Nathanson v. United States*, 290 U.S. 41, 47 (1933). Certainly then, it is an inadequate substitute for proof beyond a reasonable doubt of an essential element of the offense for purposes of determining threshold drug quantity under 21 U.S.C. § 841(b). Buckner's ambiguous statement that the men were business partners was wholly conclusory and unsubstantiated by any underlying facts offered by Buckner.

The evidence against Mr. Wilson showed that he participated in a single drug deal of 3.3 ounces powder cocaine. JA 571-572, 701. There was no indication of his ongoing participation in or awareness of an ongoing agreement beyond that. Even Wilson's participation in the April deal was itself an unexpected and last minute development. There was no evidence that Wilson was consulted about the April deal until the last minute, no evidence that he profited from the deal, and no evidence whatsoever that he was involved in or aware of any other drug activity involving Buckner, Collins, or the other conspirators.

In response to the question whether he had *ever* observed Wilson sell drugs, Buckner answered yes; that he [Buckner] bought approximately ½ ounce of crack from Wilson one time. JA 456. He did not say when the sale occurred, or if it even occurred during the timeframe of the conspiracy alleged in the indictment. JA 456. Collins was not alleged to have been involved in the sale. In sum, there

24

was no link between that insolated sale and the conspiracy.  While Buckner knew

who Mr. Wilson was, the government could not establish any phone contact

between the two, despite admitting into evidence phone records of both men.  JA

464, 567.  Buckner did not even have Wilson listed among the 336 phone contacts

programmed into his phone.  JA 488, 498-99.

Finally the evidence failed to demonstrate that Mr. Wilson was involved

with the contraband seized in the March 2012 traffic stop, or any alleged drug

activity leading up to the traffic stop.  JA 508-513.  Wilson was not present during

the stop nor did the government admit any evidence to establish contact between

Collins and Wilson on or near the date of the stop.  JA 508-513, 566.  The fact that

Wilson was seen driving the car on a couple of occasions roughly one year before

has little bearing on the matter, given that there was no evidence to establish who

owned the car; whether the trap was present in the car when Wilson drove it eleven

months before; and if so, whether Wilson was aware of the existence of the trap.

JA 116, 154.  Significantly, the evidence suggests that Wilson did not use the trap

in the April deal because Buckner testified on direct examination that he did not

know if the blue Acura had a hidden trap.  J.A. 112.  If Wilson had used the trap to

access the drugs for the April deal, Buckner who was inside the Acura with

Wilson, would presumably have seen it.

In sum, the evidence against Wilson proved his participation in a three ounce

drug deal during the course of the conspiracy. Any finding that he was responsible for, or that it was reasonably foreseeable to him that the conspiracy involved, five kilograms or more of powder cocaine and 28 grams or more of crack cocaine was unsupported by the evidence and based on mere speculation.

## VI.   THE TRIAL COURT ERRED AT SENTENCING IN HOLDING MR. WILSON ACCOUNTABLE FOR 150 KILOGRAMS OF COCAINE FOR GUIDELINES PURPOSES.

### A. Standard of Review.

A district court's sentence is reviewed for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). A reviewing court must first ensure that the district court committed no significant procedural error. *United States v. Evans*, 526 F.3d 155, 161 (4th Cir.2008).

### B. Discussion of Issues.

In the event this Court agrees that the evidence was insufficient to convict Mr. Wilson, under 21 U.S.C. § 841(b), of a drug quantity of five kilograms or more of cocaine and 280 grams or more of crack, it should next consider whether the trial court erred in calculating the drug quantity under the guidelines. A district court must provide an individualized assessment of its selected sentence. *United States v. Carter*, 564 F.3d 325, 328-29 (4th Cir. 2009). Failure to do so constitutes procedural error. *Id.* The district court's explanation is sufficient so long as it permits this court to conduct a meaningful review, such that the appellate court

need "not guess at the district court's rationale.". *United States v. Bell*, 667 F.3d 431 (4th Cir., 2011).  Here, the district court offered no explanation to support it's determination that Mr. Wilson should be held accountable for over 150 kilograms of cocaine (base offense level 38).  JA 781.  Moreover, the court's comments at the sentencing hearing suggest that the court employed an incorrect standard in determining, for guidelines purposes, the individual amount of drug quantity that Mr. Wilson could be held accountable for.  In response to counsel's argument that the drug quantity had to be reasonably foreseeable to the individual conspirator being sentenced (JA772-73) the district court stated "reasonably foreseeable to the conspiracy, wouldn't it be?" and "it's the amount of the conspiracy, not the amount of the individual touched or whatever."   JA 773.  For these reasons, and those discussed *infra*, in section V, Mr. Wilson submits that district court erred in finding him responsible for over 150 kilograms of cocaine.

## VII. THE DISTRICT COURT ERRED IN FAILING TO PROPERLY INSTRUCT THE JURY TO MAKE AN INDIVIDUALIZED DETERMINATION OF DRUG QUANTITY ATTRIBUTABLE TO EACH DEFENDANT BASED UPON *PINKERTON* PRINCIPLES OF REASONABLE FORESEEABILITY

### A. Standard of Review.

A district court's refusal to give a requested defense jury instruction is reviewed under the abuse of discretion standard. *United States v. Patterson,* 150 F.3d 382, 387-388 (4th Cir. 1998).  However, whether a district court has properly

instructed the jury on the law is reviewed *de novo.* *United States v. Thompson,*

421 F.3d 278 (4th Cir. 2005)**.**

**B. Discussion of Issues.**

It is well settled law in this Court that upon a proper request "a defendant is

entitled to an instruction submitting to the jury any theory of defense for which

there is a foundation in the evidence." *United States v. Hicks,* 748 F.2d 854, 857

(4th Cir. 1984). A district court's refusal to give a defendant's requested

instruction will constitute reversible error if the instruction "(1) was correct; (2)

was not substantially covered by the court's charge to the jury; and (3) dealt with

some point in the trial so important, that failure to give the requested instruction

seriously impaired the defendant's ability to conduct his defense." *United States v.*

*Lewis,* 53 F.3d 29, 32 (4th Cir. 1995).

Prior to trial, counsel for Mr. Wilson requested the court give specific jury

instructions on: i) determining drug quantity based on individualized reasonable

foreseeability; and ii) admonishing the jury to consider each defendant separately.

JA 287, 301.  The "determining drug quantity" instruction requested by counsel

stressed, in relevant part, "it is necessary to make an individualized determination

of the quantity of drugs attributable to each defendant."  JA301.  The "consider

each defendant individually" instruction stated in relevant part "you must bear in

mind that guilt is individual… your verdict as to each defendant must be

determined separately with respect to him".  JA 287.

Shortly before closing arguments, Judge Hilton advised counsel for the first time which topics he intended to instruct the jury on.  JA 601. Among others topics, he stated that he would "tell them about the foreseeability of a drug quantity" and  "tell them they've got to make an individual finding on each of these counts for each defendant." JA 601-602.  Counsel for Wilson asked the court if it intended to cover her instruction to "consider each defendant separately" and the court answered "yes." JA 606.  In fact, the court did not give that instruction. Compounding this error, the court's "determining drug quantity" instruction differed substantially from the model instruction requested by Wilson. The court's instruction stated:

> *the defendants* are accountable for the quantity of controlled substances that *they personally* distributed or that *they could reasonably foresee* that *others* would distribute during and in furtherance of the conspiracy (emphasis added) JA 638.

Rather than stressing the need to make an individualized determination of drug weight culpability, the instruction mislead the jury to group the defendants together when deciding drug weight.  It set up a dichotomoy with Wilson and Collins in one group and the remaining conspirators in the other.  If the court had given the "consider each defendant separately" instruction requested by Wilson, that may have cured the problem.  Despite assuring counsel to the contrary, it did not.  Accordingly, the instruction given by the court on determining drug weight

culpability runs afoul of the mandates of *United States v. Collins*, 415 F.3d at 304, which require the district court to instruct the jury, in accord with *United States v. Irvin*, 2 F.3d 72 (1993), to make an *individualized* determination of the drug quantity attributable to each defendant based upon *Pinkerton* principles of reasonable foreseeability. *Collins*, 415 F.3d a 313-314; *Irvin*, 2 F.3d at 78; *see also United States v. Foster*, 507 F.3d 233 (2007) (concluding that for purposes of 21 U.S.C. § 841(b), the jury must determine that the threshold drug amount was reasonably foreseeable to the individual defendant"). Given the overwhelming disparity in the evidence regarding each defendant's participation in the conspiracy, the district court's failure to give the requested instructions seriously impaired Wilson's defense and constitutes reversible error.

The district court also erred in instructing the jury:

> You may consider acts knowingly done and statements knowingly made by the defendants' coconspirators during the life of the conspiracy and in furtherance of it as evidence pertaining to the defendants even though they were done or made in the absence of and without the knowledge of the defendants. This includes acts done or statements made before the defendants joined – or had joined the conspiracy, *for a person who knowingly, voluntarily, and intentionally joins an existing conspiracy is responsible for all of the conduct of the coconspirators from the beginning of the conspiracy*." JA 637-638. (emphasis added)

This instruction mislead the jury as to the law in this Circuit on the issue of determining drug quantity culpability in conspiracy cases. *See Irvin*, 2 F.3d at 78 (holding that when determining drug quantity culpability for § 841(b) purposes, the

court must rely on *Pinkerton* principles of reasonable foreseeabilty); *Collins* 415, F.3d at 314 (vacating a defendant's sentence where the district court failed to instruct the jury, in accord with Irvin, to use Pinkerton principles when deciding drug quantity under § 841(b)). The instruction conflicts with the law of reasonable foreseeability and lead the jury to believe that once they determined that Mr. Wilson was a member of the conspiracy, he was responsible for all of the drug weight involved in the conspiracy, regardless of foreseeabiliy.

## VIII. THE DISTRICT COURT COMMITTED REVERSIBLE ERROR IN ADMITTING AGAINST MR. WILSON A JAIL PHONE CALL CONTAINING PREJUDICIAL STATEMENTS MADE BY MR. COLLINS AFTER THE CONSPIRACY ENDED

### A. Standard of Review.

This court reviews the trial court's admission of evidence for abuse of discretion. *United States v. Blevins*, 960 F.2d 1252, 1255 (4th Cir. 1992). It reviews alleged Confrontation Clause violations under the de novo standard of review." *United States v. Lighty*, 616 F.3d 321, 376 (4th Cir. 2010),

### B. Discussion of Issues.

The district court admitted a post-arrest jail phone call between Wilson and Collins (Government's Exhibit 41) into evidence against both defendants. JA537-541, 578-580. Mr. Wilson objected to the jail call, or more precisely the portion of the call containing Collins' statements, on hearsay and Confrontation Clause grounds. JA 537-41; 567, 578-580; 732-734. In its response to Wilson's

objection, the government described the call to the court as "the two of them [Collins and Wilson] getting their stories straight on the Taco Cabana thing…" JA 539 and "they agree together that they are going to need to get on the same page with respect to the Taco Cabana deal."JA540.   In actuality, the call went as follows:

> Collins: "Another thing that might gotta come, you know, we gotta see how we gonna put this in order is about that,  uh… whatever they talking about happened at the Taco Cabana.   We gotta… to the lawyers rather, we gotta confirm it or not confirm it, you know, and they got to work they're way around that some type of way and I don't wanna just say… then, you know, there's no way they can reform that shit in some type of way.   You know what I'm saying.   Of course …
>
> Wilson: Man… [unintelligible]
>
> Collins: …they're not gonna go in there and say "yeah", it happened, you know what I'm saying, but I aint…
>
> Wilson: she's working on that shit right now, but aint no need to be reformed dog, the shit is bullshit.
>
> Collins: It can be bullshit bro, but it's to the point about how much the FBI got about that shit and how . . . you know what I'm saying.   And if we just straight up say, you know what I'm saying I can't really get at you but I wanna get a confirmation with you if we on the same page before I take it there."  JA 716.

In response to Wilson's objection, the district count ruled "I think that's a statement made adverse to your position and that can come in."  JA 541.  The court explained "I don't believe that whether they reached an agreement or not is the crux of it.   In essence, it was an admission that they were involved in the

conspiracy…" JA 578.  The court also accepted the government's argument that "it's not hearsay because it's a statement of both defendants and its offered by the party opponent. . .   It's simply got to be a statement by one of the defendants offered by the party opponents."  JA580.  It is not clear which hearsay exception the court relied upon in making its ruling; as the court's logic does not follow any of the exceptions enumerated in Federal Rule of Evidence ("FRE") 801(d)(2).  However, the two sections that most closely resemble the rationale offered by the court are FRE 801(d)(2)(A) and (B).

Under Federal Rule of Evidence 801(d)(2)(A), a statement is not hearsay if it is offered against *a party* and was *made by the party* in an individual or representative capacity.  Thus, Collins' statements, no matter how adverse to Wilson's position, do not come in against Wilson under this exception.  The trial court abused its discretion in so finding.

Under Federal Rule of Evidence 801(d)(2)(B), a statement is not hearsay if it is one the party manifested that it adopted or believed to be true.  "The general rule concerning admissions by silence or acquiescence is well established. When an accusatory statement is made in the defendant's presence and hearing, and he understands and has an opportunity to deny it, the statement and his failure to deny are admissible against him. Fed.R.Ev. 801(d) (2)(B)." *U.S. v. Moore*, 522 F.2d 1068, 1075 (9th Cir. 1975).   Here, Wilson did nothing to adopt Collins'

sntatements, nor did he remain silent in the wake of Collins' suggestion that the evidence needed to be "reformed." To the contrary, Wilson bluntly rejected Collins' assertion by stating "aint no need to be reformed dog… the shit is bullshit." The trial court could not have found that Wilson adopted Collins' statements without abusing its discretion.

The Confrontation Clause of the Sixth Amendment bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). A statement is testimonial if it was "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* at 51-52. In *Bruton v. United States*, 391 U.S. 123 (1968), the Supreme Court held that in certain circumstances, admission of a non-testifying co-defendant's confession that inculpates the defendant violates the Sixth Amendment's Confrontation Clause because the defendant has no opportunity for cross-examination. 391 U.S. at 126, 88 S.Ct. 1620; *see also United States v. Campbell*, 935 F.2d 39, 43 (4th Cir.1991) (stating that *Bruton* prohibits the admission of a statement of a non-testifying co-defendant "if it could be fairly understood to incriminate the accused").

Here, Collins did not testify and was not subject to cross examination. His

statements to Wilson occurred in the course of a recorded jail phone call that took place after the men had been arrested and were awaiting trial.  JA 716. His suggestion to Wilson that the events involving the Taco Cabana needed to be "reformed" incriminated Wilson not only in the April drug deal, but in the overall conspiracy as well.  The government voiced this very point when they argued to the court that the call "shows they were working in agreement with one another….".  JA 580.  Because Collins' statements were testimonial and plainly implied that Wilson was guilty of the conspiracy for which he was on trial, their admission into evidence against Wilson violated his right of Confrontation under the 6th Amendment.

## CONCLUSION

For the foregoing reasons, the guilty verdict as to count one should be stricken and the case remanded for a new trial as to Mr. Collins and Mr. Wilson. The guilty verdict as to count two should be stricken as to Mr. Collins and the case remanded for a new trial (or dismissal at the trial court level, depending on the reason for reversal).

## REQUEST FOR ORAL ARGUMENT

Oral argument is requested for this appeal by both Mr. Collins and Mr. Wilson.

Respectfully submitted,


/s/ Christopher R.K. Leibig
Christopher R. K. Leibig
Law Office of Christopher Leibig LLC
114 North Alfred Street, Suite 101
Alexandria, Virginia  22314
(703) 683-4310 Telephone
chris@chrisleibiglaw.com

*Counsel for Appellant Raymond Collins*

/s/ Joan C. Robin
Joan C. Robin
Law Office of Joni C. Robin PLLC
114 North Alfred Street
Alexandria, Virginia  22314
(703) 349-1111 Telephone
joni@jonirobinlaw.com

*Counsel for Appellant Edward Wilson*

## CERTIFICATE OF COMPLIANCE

This <u>Brief of Appellellees</u> has been prepared using:

> <u>Microsoft Word</u>

> <u>Times New Roman</u>

> <u>14 Point Type Space (a proportionally spaced Font).</u>

Exclusive of the Corporate Disclosure Statement, Table of Contents, Table of Authorities, Request for Oral Argument, the Certificate of Compliance and Certificate of Filing and Service, this brief contains <u>8,437</u>words.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.


<u>/s/ Christopher R.K. Leibig</u>
Christopher R. K. Leibig

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 30th day of September, 2013, I electronically filed the foregoing Consolidated Opening Brief of Appellants with The United States Court of Appeals for the Fourth using the CM/ECF system, which will send notification to the following:

Michael P. Ben'Ary
Office of the U.S. Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
michael.ben'ary2@usdoj.gov

*Counsel for Appellee*

/s/ Christopher R.K. Leibig
Christopher R. K. Leibig